IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRANKLYN K. JONES,
    *Plaintiff*

    v.

GENERAL ELECTRIC COMPANY, *et al.*
    *Defendants.*

Civil Action No. ELH-19-196

## MEMORANDUM OPINION

Franklyn K. Jones, the self-represented plaintiff, filed suit against a host of defendants. They include his former employer, General Electric Company ("GE"), as well as Metropolitan Life Insurance Company ("MetLife"); Sedgwick Claims Management Services, Inc. ("Sedgwick"); Bon Secours Mercy Health, Inc. ("Bon Secours"); Yoh Services, LLC ("Yoh"); and thirteen individuals: Pierre Feraud, Pierre De-La-Borderie, Cinthia Arcuri, Ivonne M. Basora, Dixie Chavez, Caroline Jennings, Betty Ansel, Allison M. Lue, Christopher Murray, Phillip Mike Hall, Jim Brault, Dennis Callmie, and Kelly Ayanna. ECF 42 ("Amended Complaint").[1]

The Amended Complaint is 121 pages in length. Plaintiff appended an additional 88 pages of exhibits. ECF 42-1 to ECF 42-6. And, the Amended Complaint incorporates by reference

---

[1] Plaintiff filed suit in the Circuit Court for Baltimore City. *See* ECF 1 ("Notice of Removal"). GE, MetLife, Sedgwick, and Yoh timely removed the case to this Court, pursuant to 28 U.S.C. §§ 1441, 1446, 1331, and 1367. ECF 1.

Plaintiff's Amended Complaint refers to defendant Pierre De-La-Borderie as "Pierre De La Boderie." *See* ECF 42, ¶ 7. However, in his motion to dismiss, the defendant spells his last name "De-La-Borderie." *See* ECF 46-1. Similarly, the Amended Complaint refers to defendant Dennis Calmie as "Dennis Callmie." *See* ECF 42, ¶ 17. But, in his motion to dismiss, the defendant spells his last name "Calmie." *See* ECF 52. The Court will adopt the defendants' spelling of their names and direct the Clerk to correct the spelling on the docket.

plaintiff's 266-page initial Complaint. ECF 1-3 (the "Complaint").[2] The Amended Complaint is difficult to decipher. But, as best the Court can tell, the gravamen of plaintiff's suit is that GE unlawfully terminated him on the basis of his disability, national origin, and age, and he was wrongfully denied disability benefits under GE's long-term disability plan, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended 29 U.S.C. §§ 1001, *et seq.*

The proverbial "kitchen sink" Amended Complaint asserts the following causes of action: "Defamation By Way of Libel & Slander" (Count A); "Torturous [sic] Interference With Existing Contracts" (Count B); Aiding & Abetting (Count C); Conspiracy (Count D); "Ratification" (Count E); "Retraction" (Count F); "EEOC Violation, National Origin" (Count G); "EEOC Violation, Disability" (Count H); "EEOC Violation, Disability" (Count I); "18 USC 1589 violation Forced Labor" (Count J); "Abuse of Process in each respective Venue" (Count K); "Maryland Code, Insurance Title 27 - Unfair Trade Practices And Other Prohibited Practices" (Count L); numerous violations of ERISA (Counts M-I to M-VIII); and a hodge-podge of federal criminal statutes (Count N). *See* ECF 42 at 2-3; *see id.* at 44-106.

All of the defendants have moved to dismiss; six motions are pending. First, Arcuri, Basora, Feraud, and De-La-Borderie have filed a motion to dismiss (ECF 46), pursuant to Fed. R. Civ. P. 8(a), 12(b)(2), 12(b)(5), and 12(b)(6), supported by a memorandum of law (ECF 46-1) (the "Arcuri Motion") and one exhibit. ECF 46-2. Second, GE filed a motion to dismiss, pursuant to Rules 8(a) and 12(b)(6) (ECF 47), supported by a memorandum (47-1) (the "GE Motion"), and one exhibit. ECF 47-2. Third, Yoh and Jennings, pursuant to Rule 12(b)(6), have filed a motion

---

[2] By the Court's estimate, plaintiff has submitted over 450 pages of factual averments.

to dismiss (ECF 48), supported by a memorandum (ECF 48-1) (the "Yoh Motion") and one exhibit. ECF 48-2. Fourth, MetLife, Hall, Brault, Calmie, Ayanna, and Murray filed a motion to dismiss under Rule 12(b)(6) (ECF 52) (the "MetLife Motion"), supported by one exhibit. ECF 52-1. Fifth, Bon Secours filed a motion to dismiss under Rules 8 and 12(b)(6) (ECF 53), supported by a memorandum. ECF 53-1 (the "Bon Secours Motion"). And, sixth, Sedgwick, Ansel, and Lue have filed a motion to dismiss under Rule 12(b)(6). ECF 54 (the "Sedgwick Motion").

Plaintiff opposes the motions. ECF 58 ("Opposition"). Defendants have replied. ECF 60; ECF 61; ECF 62; ECF 63; ECF 64.[3]

No hearing is necessary to resolve the pending motions. *See* Local Rule 105.6. For the reasons that follow, I shall grant the motions. ECF 46; 47; ECF 48; ECF 52; 53 ECF 54.

# I. Background[4]

## A. Factual Background

GE hired plaintiff on or about November 7, 2016, to serve as a Lead Repair Development Engineer for GE Grid Solutions. ECF 8-1, ¶ 2 ("Memorandum of Plaintiff"); ECF 8-4 ("GE Offer Letter"). The position was home-based, meaning plaintiff would work remotely from his home in Baltimore, Maryland. ECF 42 at 5. According to his GE Offer Letter, plaintiff reported to Pierre Feraud, the Senior Services Staff Manager at GE Grid Solutions. ECF 8-4. And, Cinthia Arcuri served as plaintiff's Human Resources Contact. *Id.*

In December 2016, plaintiff became ill and was later diagnosed with stage II colon cancer. ECF 8-1, ¶ 3. On February 10, 2017, he was "approved for Short Term Income offered and

---

[3] GE filed a joint reply with Arcuri, Basora, Feraud, and De-La-Borderie. ECF 60.

[4] The Factual Background is drawn from the Complaint, the Amended Complaint, and plaintiff's voluminous exhibits.

administered by GE/Sedgwick." *Id.* ¶ 9. During his treatment, plaintiff alleges that he began to experience Post Traumatic Stress Disorder ("PTSD") and depression. *Id.* ¶¶ 11-13.

In late November 2017, and through mid-January 2018, plaintiff explored with Mr. Feraud, Mr. De-La-Borderie, Ms. Basora, and Ms. Arcuri the possibility of returning to work. ECF 8-14; ECF 8-15. During these conversations, plaintiff alleges that he requested that GE agree to a lifting restriction on his work and approve the use of a service dog. *See* ECF 1-3 at 170. In a conference call with GE on January 12, 2018, plaintiff alleges that he "was told that no accommodation would be made." ECF 8-1, ¶ 28. Further, plaintiff alleges that GE told him that he would be terminated unless he produced a doctor's letter stating that he had no work restrictions. *Id.* GE terminated plaintiff in January or February of 2018. *Id.* (alleging discharge in January 2018); *see* ECF 17 (EEOC Charge) (alleging discharge in February 2018).

Although GE no longer employed plaintiff, MetLife continued assessing whether plaintiff was eligible for long-term disability ("LTD") benefits under the GE Long Term Disability Income Plan for Salaried Employees ("GE Plan"). ECF 8-1, ¶ 36. However, an issue arose as to whether plaintiff held a college degree, which was relevant to whether, according to MetLife's Labor Market Survey ("LMS"), he was totally disabled. *Id.* ¶ 37; *see* ECF 8-25. According to plaintiff, he received the following email on May 4, 2018, from MetLife employee Christopher Murray, ECF 8-25:

> We took your educational information from the LTD application that you completed in order to receive benefits. You circled on the attached form that you had a college degree and that the highest grade completed was 16. That amounts to a Bachelor's Degree. Are you now indicating that this information that you provided to Metlife is untrue? Please provide an explanation for this information, as I will need to discuss with claims management team. We may need to conduct a 2nd Labor Market Survey.

GE allegedly determined on May 23, 2018, that plaintiff did not qualify for LTD benefits because he was not "totally disabled" under terms of the GE Plan. ECF 8-8 ("Denial Letter"). GE explained to plaintiff that MetLife's first LMS determined that he was not disabled. *Id.* at 3. Because it was based on the assumption that plaintiff had a bachelor's degree in electrical engineering, a second LMS was performed. *Id.* at 4. However, that analysis also determined that plaintiff had employment opportunities in his local labor market. *Id.* at 4. As a result, GE stated that "GE Long-Term Disability Income Benefits are no longer payable," and therefore it would close plaintiff's claim. *Id.* The Denial Letter informed plaintiff that he "ha[d] the right to bring [a] civil action under section 502(a) of the Employee Retirement Income Security Act of 1974 upon completion of two administrative appeals." *Id.* at 5.

Plaintiff appealed the denial, and the appeal was denied on June 8, 2018. ECF 8-9 ("First Denial Decision"). The First Denial Decision was signed by MetLife Appeals Specialist Mike Hall. *Id.* at 5. He stated, in part, *id.* at 4-5:

> The labor Market Survey (LMS) found 12 employers in your area that had positions available that met your limitations/restrictions and provided commensurate wages. While you require a companion dog for travel, none of these positions required travel. Upon learning that an erroneous educational level had been used, the LMS vendor re-contacted the employers. Ten out of the twelve employers indicated that they would still consider you as a candidate without a Bachelor's degree due to your wealth of experience. Since the evidence available to us suggests that you are able to engage in other occupations, we cannot find that you remain totally disabled as defined by your Plan.
>
> You are now suggesting that your disabling impairment is PTSD. Absent any evidence regarding this disorder, we cannot determine whether this condition is totally disabling or results in any limitations.

Plaintiff was again informed that he may "bring a civil action under Section 502(a) of the Employee Retirement Income Security Act of 1974 as amended," but only after he "exhaust[ed] [his] administrative appeal rights under the Plan." *Id.* Plaintiff filed a second administrative

appeal.  *See* ECF 8-1, ¶ ¶ 14-15.  In a letter dated February 12, 2019, MetLife reversed the first

claim decision and reinstated plaintiff's disability benefits under the GE Plan.  ECF 20-8 (Feb. 12,

2019 Letter).

**B. Procedural Background**

Mr. Jones filed the instant action in the Circuit Court for Baltimore City on December 12,

2018.  ECF 1-3 ("Complaint").  The Complaint alleged employment discrimination, violations of

ERISA, and various tort claims under Maryland law.  ECF 1-3.  On January 22, 2019, defendants

GE, MetLife, Sedgwick, and Yoh timely removed the State action to this Court.  ECF 1.

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity

Commission ("EEOC") on February 14, 2019.  ECF 17 ("Charge").  In his Charge, plaintiff

alleged, *id*. at 1:

> I began my employment with the above-named Respondent in November
> 2016, as a Lead Repair Development Engineer. I was discharged in February 2018.
> I was not given a reason for the difference in treatment.
>
> I believe I was discriminated against because of my national origin
> (American), age (52), and disabilities with respect to Hiring and Discharge in
> violation of Title VII of the Civil Rights Act of 1964, as amended, the Age
> Discrimination in Employment Act of 1967, as amended, and the Americans with
> Disabilities Act of 1990, as amended by the Americans with Disabilities Act
> Amendments Act of 2008.

Defendants moved to dismiss plaintiff's Complaint.  *See* ECF 18; ECF 20; ECF 21; ECF

24; ECF 26; ECF 28.

In response, Mr. Jones filed a motion for the appointment of counsel and for an extension

of time to respond to the motions to dismiss (ECF 39), supported by several exhibits.  ECF 39-2

to ECF 39-11.  He asserted that he needed counsel to articulate his claims and responses more

clearly. ECF 39.  Further, he maintained that appointment of counsel would result in the more

efficient adjudication of this case. *Id.* at 2. In light of the six pending motions, he also requested a 90-day extension of the time to respond. *Id.* at 4.

On March 13, 2019, the Court denied plaintiff's request for the appointment of counsel. ECF 41 at 1. However, the Court granted plaintiff's request for an extension of time, allowing him an additional ninety days to respond to defendants' motions. *Id.* at 2.

Then, on April 5, 2019, the EEOC dismissed plaintiff's Charge. ECF 42-3. It said, *id.* at 2: "Having considered all the information provided by you, your charge was not timely filed with the EEOC."

On May 17, 2019, plaintiff filed the Amended Complaint instead of an opposition to the defense motions. In addition to re-asserting the claims lodged in the original Complaint against the same defendants, the Amended Complaint contains additional ERISA violations and asserts eighteen criminal law causes of action under Title 18 of the United States Code.

As noted, defendants have moved to dismiss the Amendment Complaint. ECF 46; ECF 47; ECF 48; ECF 52; ECF 53; ECF 54.

## II. Standards of Review

### A. Rule 12(b)(2)

The Arcuri Motion, which moves to dismiss the Amended Complaint for lack of personal jurisdiction, implicates Fed. R. Civ. P. 12(b)(2). ECF 46-1. "[A] Rule 12(b)(2) challenge raises an issue for the court to resolve, generally as a preliminary matter." *Grayson v. Anderson*, 816 F.3d 262, 267 (4th Cir. 2016). Under Rule 12(b)(2), the burden is "on the plaintiff ultimately to prove the existence of a ground for jurisdiction by a preponderance of the evidence." *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *see Grayson*, 816 F.3d at 267.

When "the existence of jurisdiction turns on disputed factual questions the court may resolve the [jurisdictional] challenge on the basis of a separate evidentiary hearing, or may defer ruling pending receipt at trial of evidence relevant to the jurisdictional question." *Combs*, 886 F.2d at 676. In its discretion, a court may also permit discovery as to the jurisdictional issue. *See Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 64 (4th Cir. 1993). However, neither discovery nor an evidentiary hearing is required in order for the court to resolve a motion under Rule 12(b)(2). *See generally* 4A WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE § 1351 (4d ed. 2019).

"The plaintiff's burden in establishing jurisdiction varies according to the posture of a case and the evidence that has been presented to the court." *Grayson*, 816 F.3d at 268. "When personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt*., 935 F.3d 211, 226 (4th Cir. 2019); *see Grayson*, 816 F.3d at 268. In that circumstance, "the district court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Hawkins*, 935 F.3d at 226; *accord Sneha Media & Entm't, LLC. v. Assoc. Broad. Co. P Ltd.*, 911 F.3d 192, 196 (4th Cir. 2018); *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc*., 334 F.3d 390, 396 (4th Cir. 2003). However, "[u]nlike under Rule 12(b)(6), the court may also consider affidavits submitted by both parties, although it must resolve all factual disputes and draw all reasonable inferences in favor of the party asserting jurisdiction." *Hawkins*, 935 F.3d at 226; *see Consulting Eng'rs Corp. v. Geometric Ltd*., 561 F.3d 273, 276 (4th Cir. 2009); *Grayson*, 816 F.3d at 268; *Mylan Labs.*, 2 F.3d at 62.

Notably, "'[a] threshold *prima facie* finding that personal jurisdiction is proper does not finally settle the issue; plaintiff must eventually prove the existence of personal jurisdiction by a

preponderance of the evidence, either at trial or at a pretrial evidentiary hearing.'" *Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 n.5 (4th Cir. 2005) (citation omitted).

## B. Rule 12(b)(6)

A defendant may test the legal sufficiency of a complaint by way of a motion to dismiss under Rule 12(b)(6). *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *see also Paradise Wire & Cable Defined Benefit Pension Plan v. Weil*, 918 F.3d 312, 317 (4th Cir. 2019); *Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). To be sure, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Moreover, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."

*Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 10 (2014) (per curiam). But, mere "'naked assertions' of wrongdoing" are generally insufficient to state a claim for relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citation omitted).

In other words, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. "[A]n unadorned, the-defendant-unlawfully-harmed-me accusation" does not state a plausible claim of relief. *Iqbal*, 556 U.S. at 678. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotation marks omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co.*, 637 F.3d at 440 (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). But, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Glassman v. Arlington Cty.*, 628 F.3d 140, 146 (4th Cir. 2010). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the legal remedy sought. *A Society Without a Name v. Virginia*, 655

F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Courts ordinarily do not "'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses'" through a Rule 12(b)(6) motion. *Edwards*, 178 F.3d at 243 (quoting *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). However, "in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007) (en banc); *accord Pressley v. Tupperware Long Term Disability Plan,* 553 F.3d 334, 336 (4th Cir. 2009). Because Rule 12(b)(6) "is intended [only] to test the legal adequacy of the complaint," *Richmond, Fredericksburg & Potomac R.R. Co. v. Forst,* 4 F.3d 244, 250 (4th Cir. 1993), "[t]his principle only applies . . . if all facts necessary to the affirmative defense 'clearly appear[ ] *on the face of the complaint.*'" *Goodman,* 494 F.3d at 464 (quoting *Forst,* 4 F.3d at 250) (emphasis added in *Goodman*).

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co.*, 637 F.3d at 448). Ordinarily, the court "may not consider any documents that are outside of the complaint, or not expressly incorporated therein . . . ." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013); *see Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007).

But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). In particular, a court may properly consider documents that are "explicitly incorporated into the

complaint by reference and those attached to the complaint as exhibits." *Goines*, 822 F.3d at 166 (citation omitted); *see also Six v. Generations Fed. Credit Union*, 891 F.3d 508, 512 (4th Cir. 2018); *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014); *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 136 (4th Cir. 2014); *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004), *cert. denied*, 543 U.S. 979 (2004); *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999).

However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it." *Goines*, 822 F.3d at 167 (citing *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 455 (7th Cir. 1998)). Of import here, "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines*, 822 F.3d at 167. Conversely, "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

A court may also "consider a document submitted by the movant that [is] not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166 (citations omitted); *see also Woods v. City of Greensboro*, 855 F.3d 639, 642 (4th Cir. 2017), *cert. denied*, __ U.S. __, 138 S. Ct. 558 (2017); *Oberg*, 745 F.3d at 136; *Kensington Volunteer Fire Dep't. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012). To be "integral," a document must be one "that by its 'very existence, *and not the mere information it contains*, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602,

611 (D. Md. 2011) (citation omitted) (emphasis in original). *See also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In addition, "a court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb*, 791 F.3d at 508; *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.,* 637 F.3d 462, 466 (4th Cir. 2011), *cert. denied*, 565 U.S. 825 (2011); *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). However, under Fed. R. Evid. 201, a court may take judicial notice of adjudicative facts only if they are "not subject to reasonable dispute," in that they are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."

The Amended Complaint expressly incorporates by reference plaintiff's Complaint (ECF 1-3) and its exhibits. *See* ECF 42, ¶¶ 59-60. It also references the six exhibits appended to it (ECF 42-1 to ECF 42-6). *See* ECF 42, ¶¶ 59-60. Accordingly, I may consider these documents at this stage, without converting the motions to ones for summary judgment. In addition, I may consider the letter that MetLife sent to plaintiff, dated February 12, 2019, in which MetLife reversed its denial of plaintiff's LTD benefits under the Plan (ECF 20-3), as it is integral to plaintiff's ERISA claims.

I am mindful that plaintiff is self-represented. Thus, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "However, liberal construction does not absolve Plaintiff from pleading a plausible claim." *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F.

App'x 135 (4th Cir. 2014); *see also Coulibaly v. J.P. Morgan Chase Bank*, *N.A.*, DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim."); *aff'd*, 526 F. App'x 255 (4th Cir. 2013).

Moreover, a federal court may not act as an advocate for a self-represented litigant. *See Brock v. Carroll*, 107 F.3d 241, 242-43 (4th Cir. 1996); *Weller v. Dep't of Social Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Therefore, the court cannot "conjure up questions never squarely presented," or fashion claims for a plaintiff because he or she is self-represented. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986); *see also M.D. v. Sch. Bd. of City of Richmond*, 560 F. App'x 199, 203 n.4 (4th Cir. 2014) (rejecting self-represented plaintiff's argument that district court erred in failing to consider an Equal Protection claim, because plaintiff failed to allege it in the complaint).

As the Fourth Circuit has said: "To do so would not only strain judicial resources by requiring those courts to explore exhaustively all potential claims of a pro se plaintiff, but would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett*, 775 F.2d at 1278. What the Fourth Circuit stated in *Harris v. Angliker*, 955 F.2d 41, 1992 WL 21375, at *1 (4th Cir. 1992) (per curiam) (unpublished), is also apt:

> It is neither unfair nor unreasonable to require a pleader to put his complaint in an intelligible, coherent, and manageable form, and his failure to do so may warrant dismissal. *Corcoran v. Yorty*, 347 F.2d 222, 223 (9th Cir.), *cert. denied*, 382 U.S. 966, 86 S. Ct. 458, 15 L.Ed.2d 370 (1965); *Holsey v. Collins*, 90 F.R.D. 122, 128 (D. Md. 1981). District courts are not required to be mind readers, or to conjure questions not squarely presented to them. *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088, 106 S. Ct. 1475, 89 L.Ed.2d 729 (1986).

## III. Discussion

Defendants' arguments to dismiss the Amended Complaint generally fall into three buckets. First, defendants assert that the Amended Complaint is unintelligible and therefore does not satisfy the pleading requirements set forth in Rule 8 of the Federal Rules of Civil Procedure. ECF 46-1 at 17; ECF 47-1 at 11; ECF 52 at 10; ECF 53-1 at 6; ECF 54 at 10. Second, defendants assert that plaintiff's claims fail as a matter of law and therefore are subject to dismissal under Rule 12(b)(6). ECF 46-1 at 18-20; ECF 47-1 at 12-30, 33-34; ECF 48-1 at 6-24; ECF 52 at 12-20; ECF 53-1 at 7-16; ECF 54 at 11. Third, defendants maintain that plaintiff lacks standing to bring criminal causes of action. ECF 46-1 at 20; ECF 47-1 at 30-33; ECF 48-1 at 6-24; ECF 52 at 20; ECF; ECF 54 at 11. In addition, Arcuri, Basora, De-La-Borderie, and Feraud have moved to dismiss the Amended Complaint for lack of personal jurisdiction and lack of proper service of process, as required by Fed. R. Civ. P. 4. ECF 46-1 at 8-17.

### A. Standing

The Amended Complaint asserts multiple violations of federal criminal law. *See* ECF 42 at 96-97. These statutes are as follows:

- 18 U.S.C. § 641 (Chapter 31—Embezzlement and Theft, Section 641—Public Money, Property or Records);

- 18 U.S.C. § 648 (Chapter 31—Embezzlement and Theft, Section 648—Custodians, Generally, Misusing Public Funds);

- 18 U.S.C. § 664 (Chapter 31—Embezzlement and Theft, Section 664—Theft or Embezzlement from Employee Benefit Plan);

- 18 U.S.C. § 665 (Chapter 31—Embezzlement and Theft, Section 665—Theft or Embezzlement from Employee and Training Funds; Improper Inducement; Obstruction of Investigations);

- 18 U.S.C. § 666 (Chapter 31—Embezzlement and Theft, Section 666—Theft or Bribery concerning Programs Receiving Federal Funds);

- 18 U.S.C. § 668 (Chapter 31—Embezzlement and Theft, Section 668—Theft of Major Artwork);

- 18 U.S.C. § 875 (Chapter 41—Extortion and Threats, Section 875—Interstate Communications);

- 18 U.S.C. § 1506 (Chapter 73—Obstruction of Justice, Section 1506—Theft or Alteration of Record or Process; False Bail);

- 18 U.S.C. § 1509 (Chapter 73—Obstruction of Justice, Section 1509—Obstruction of Court Orders);

- 18 U.S.C. § 1513 (Chapter 73—Obstruction of Justice, Section 1513—Retaliating Against Witness, Victim, or an Informant);

- 18 U.S.C. § 1519 (Chapter 73—Obstruction of Justice, Section 1519—Destruction, Alteration, or Falsification of Records in Federal Investigations and Bankruptcy);

- 18 U.S.C. § 1546 (Chapter 75—Passports and Visas, Section 1546—Fraud and Misuse of Visas, Permits, and Other Documents);

- 18 U.S.C. § 1831 (Chapter 90—Protection of Trade Secrets, Section 1831—Economic Espionage);

- 18 U.S.C. § 1968 Chapter 96—Racketeer Influenced and Corrupt Organizations, Section 1986—Civil Investigative Demand);

- 18 U.S.C. § 2381 (Chapter 115—Treason, Sedition, and Subversive Activities, Section 2381—Treason); and

- 18 U.S.C. § 2382 (Chapter 115—Treason, Sedition, and Subversive Activities, Section 2382—Misprison of Treason).

The Supreme Court has made clear that "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon v. Univ. of Chi.*, 441 U.S. 677, 688 (1979). Federal rights of action, like substantive federal law, "must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979)). "To create a private right of action," the Fourth Circuit has explained, Congress must "'speak[] with a clear voice' and the statute must 'unambiguously' express the intent 'to create not just a private *right*

but also a private *remedy*." *Clear Sky Car Wash LLC v. City of Chesapeake*, 743 F.3d 438, 444 (4th Cir. 2014) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002)) (emphasis in *Gonzaga*). Where "Congress is silent or ambiguous, courts may not find a cause of action 'no matter how desirable that might be as a policy matter.'" *Planned Parenthood S. Atlantic v. Baker*, 941 F.3d 687, 695 (4th Cir. 2019) (quoting *Alexander*, 532 U.S. at 286-87). This holds true for federal criminal statues. *See Doe v. Broderick,* 225 F.3d 440, 448 (4th Cir. 2000); *Fed Sav. & Loan Ins. Co. v. Reeves*, 816 F.2d 130, 138 (4th Cir. 1987); *accord Tam Anh Pahm v. Deutsche Bank Nat. Trust Co.*, 583 F. App'x 216, 217 (4th Cir. 2014) (mem. opinion).

The sections of Title 18 cited by plaintiff do not create a private right of action. Nor do they unambiguously provide plaintiff with either a private right or remedy. To the contrary, these provisions are "bare criminal statute[s], with absolutely no indication that civil enforcement of any kind [i]s available to anyone." *Cort v. Ash*, 422 U.S. 66, 80 (1975). Indeed, because "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another," *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), "[a] private person may not initiate a criminal action in the federal courts." *Ras-Selah: 7 Tafari: El v. Glasser and Glasser PLC*, 434 F. App'x 236, 236 (4th Cir. 2011) (per curiam); *see also Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 86-87 (2d Cir. 1972) ("It is a truism . . . that in our federal system crimes are always prosecuted by the Federal Government[.]")

Other courts have reached the same conclusion. *See Doe v. Fed. Bureau of Investigation*, PX-18-0707, 2019 WL 280268, at *4 (D. Md. Jan. 22, 2019) (no private right of action under 18 U.S.C. § 1831); *Heard v. Fed. Bureau of Investigation*, 9:18-1743-HMH-BM, 2018 WL 4926459, at *3 (D.S.C. Sept. 12, 2018) (no private right under 18 U.S.C. § 1519); *Atiemo v. Proctor*, PX-16-3763, 2016 WL 7012300, at *1 (D. Md. Dec. 1, 2016) (dismissing 18 U.S.C. § 641 claim); *Hill*

*v. Colin*, 1:14-cv-354, 2016 WL 727177, at *9 (M.D.N.C. Feb. 23, 2016) (no private right of action under 18 U.S.C. § 666); *Alexander v. Hendrix*, RDB-14-2666, 2015 WL 346415, at *3 (D. Md. May 29, 2015) (no cause of action under 18 U.S.C. §§ 875 and 1509); *Rogers v. LJT Assocs. Inc.*, GLR-14-2823, 2015 WL 11027599, at *3 n.4 (D. Md. April 21, 2015) (no private right of action under 18 U.S.C. § 1831); *Prindle v. Lewis*, No. 3:10-CV-1217-B-BK, 2010 WL 4628077, at *2 (N.D. Tex. Oct. 8, 2010) (dismissing 18 U.S.C. § 1968 claims); *Shahin v. Darling*, 606 F. Supp. 2d 525, 538 (D. Del. 2009) (18 U.S.C. § 1506 "was not intended to be used in civil litigation"); *Boyd v. Boyd*, No. 07-579-JJF, 2007 UWL 4348059, at *2 (D. Del. Dec. 10, 2007) (18 U.S.C. § 648 does not provide a private civil causes of action); *NYSA-ILA Med. & Clinical Servs. Fund by & Through Capo v. Catucci*, 60 F. Supp. 2d 194, 208-09 (S.D.N.Y. 1999) (no cause of action under 18 U.S.C. § 664).

Accordingly, plaintiff may not assert claims based on alleged violations of federal criminal law. Therefore, such claims are subject to dismissal, with prejudice.

### B. Personal Jurisdiction

In the Arcuri Motion, defendants Arcuri, Basora, De-La-Borderie, and Feraud move to dismiss the Amended Complaint, pursuant to Rule 12(b)(1), asserting that the Court lacks personal jurisdiction over them. ECF 46-1 at 12-17. They contend that personal jurisdiction is lacking under Maryland's long-arm statute and as a matter of constitutional due process because De-La-Borderie and Feraud reside in Canada, Arcuri and Basora are citizens of Pennsylvania, and none of them have had meaningful contacts with the State of Maryland. *Id.* at 4-5.

Fed. R. Civ. P. 4(k)(1) permits a federal district court to exercise personal jurisdiction over a defendant in accordance with the law of the state in which the district court is located. *Carefirst*, 334 F.3d at 396. Therefore, "to assert personal jurisdiction over a nonresident defendant, two

conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Id.*; *accord Planet Aid, Inc. v. Reveal, Ctr. for Investigative Reporting*, GLR-16-2974, 2017 WL 2778825, at *4 (D. Md. June 26, 2017).

Maryland's long-arm statute is codified at Md. Code (2013 Repl. Vol., 2017 Supp.), § 6-103(b) of the Courts & Judicial Proceedings Article ("C.J.").  It authorizes "personal jurisdiction over a person, who directly or by an agent," *id.*:

> (1) Transacts any business or performs any character of work or service in the State;

> (2) Contracts to supply goods, food, services, or manufactured products in the State;

> (3) Causes tortious injury in the State by an act or omission in the State;

> (4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State;

> (5) Has an interest in, uses, or possesses real property in the State; or

> (6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation, or agreement located, executed, or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

When interpreting the reach of Maryland's long-arm statute, a federal district court is bound by the interpretations of the Maryland Court of Appeals.  *See Snyder v. Hampton Indus., Inc.*, 521 F. Supp. 130 (D. Md. 1981), *aff'd*, 758 F.2d 649 (4th Cir. 1985); *accord Mylan Labs.*, 2 F.3d at 61.

Defendants argue that Maryland's long-arm statute does not confer jurisdiction.  They aver that they do not solicit or perform business in Maryland.  ECF 46-1 at 15; *see* ECF 21-4 (De-La-Borderie Declaration); ECF 21-5 (Feraud Declaration); ECF 21-6 (Arcuri Declaration); ECF 21-7 (Basora Declaration).  And, they maintain that they do not reside in Maryland, own or rent property

in Maryland, vacation in Maryland, or have family in Maryland. ECF 21-4; ECF 21-5; ECF 21-6; ECF 21-7. Moreover, accepting plaintiff's allegations that a tort was committed, defendants maintain that "there is no allegation in the Amended Complaint or the original Complaint that any of [them]: (a) committed any tortious injury; and (b) that any tortious act was committed by them in the State of Maryland." ECF 46-1 at 15.

In his Opposition, plaintiff has not responded to defendants' personal jurisdiction arguments. However, plaintiff has the burden of establishing personal jurisdiction. *See Combs*, 886 F.2d at 676; *Grayson*, 816 F.3d at 267. In light of the evidence that defendants have adduced, plaintiff has not made a prima facie showing that Maryland's long-arm statute permits the Court to exercise jurisdiction over Arcuri, Basora, De-La-Borderie, and Feraud. Therefore, I shall dismiss the Amended Complaint as against these defendants for lack of personal jurisdiction.

### C. Fed. R. Civ. P. 8

As noted, defendants challenge the sufficiency of the Amended Complaint under Rule 8(a). ECF 46-1 at 17; ECF 47-1 at 11; ECF 52 at 10; ECF 53-1 at 6; ECF 54 at 10.

Rule 8 of the Federal Rules of Civil Procedure sets forth the "baseline standard to which all complaints must adhere." *Plumhoff v. Cent. Mortg. Co.*, 286 F. Supp. 3d 699, 701 (D. Md. 2017). Under Rule 8(a), a complaint must "contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The rule also requires that "[e]ach allegation must be simple, concise, and direct." Fed. R. Civ. P 8(d)(1). The goal of Rule 8 is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957); WRIGHT & MILLER, § 1202 (describing the objectives of Rule 8).

To be sure, courts must generously construe the pleadings of a self-represented plaintiff. *Erickson*, 551 U.S. at 94. But, "'even *pro se* litigants [must] state their claims in a[n] understandable and efficient manner.'" *Plumhoff*, 286 F. Supp. 3d at 702 (alterations in *Plumhoff*) (quoting *Stone v. Warfield*, 184 F.R.D. 553, 555 (D. Md. 1999)); *see also Adam v. Wells Fargo Bank, N.A.*, JFM-9-cv-2387, 2010 WL 3001160, at *3 (D. Md. July 28, 2010) ("[T]he leeway extended to a *pro se* plaintiff must be tempered to require the plaintiff to comply with the Federal Rules of Civil Procedure, including the pleading requirements of Rule 8."). The court owes the plaintiff no duty to wade through filings in search of viable claims. *See Plumhoff,* 286 F. Supp. 3d at 702; *see also Mann v. Boatwright*, 477 F.3d 1140, 1148 (10th Cir. 2007) ("It [i]s not the district court's job to stitch together cognizable claims for relief from the wholly deficient pleading that [plaintiff] filed.").

Whether a complaint falls short of Rule 8 turns on "various factors, including the length and complexity of the complaint; whether the complaint was clear enough to enable the defendant to know how to defend himself; and whether the plaintiff was represented by counsel." *Sewarz v. Long*, 407 F. App'x 718, 719 (4th Cir. 2011) (internal citations omitted). A complaint does not run afoul of Rule 8 merely because it is bloated with redundant allegations. *See id.* (finding district court erred in dismissing 33-page complaint where the allegations were "intelligible and clearly delineated"); *see also United States ex rel. Garst v. Lockheed–Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003) ("Surplusage can and should be ignored."). Nor does the occasional lapse in clarity doom a complaint. However, dismissal is appropriate where the complaint crosses the line from confusing to unintelligible. *See Plumhoff,* 286 F. Supp. 3d at 702 (collecting cases); *see also Mann*, 477 F.3d at 1148 (affirming Rule 8 dismissal where the court could not "separate the wheat from the chaff" in the complaint); *Lindell v. Houser*, 442 F.3d 1033, 1035 (7th Cir. 2006) ("District

courts should not have to read and decipher tomes disguised as pleadings."); *Garst*, 328 F.3d at 378 (observing that "[l]ength may make a complaint unintelligible, by scattering and concealing in a morass of irrelevancies the few allegations that matter").

Even liberally construed, plaintiff's Amended Complaint does not clear Rule 8's low bar. It lodges wide-ranging allegations against individuals and entities that are not named defendants for conduct that appears foreign to the issues at hand. *See, e.g.*, ECF 42, ¶ 36 ("The closeness of this dance between the Maryland State Judiciary and Executive offices and the Defendants, to date, is disturbing at a minimum and deserving of criminal prosecution. Let us pray, sunlight disinfects."); *id.* ¶ 39 (accusing the Baltimore Mayor, Maryland Insurance Commissioner, Maryland Attorney General, and the Governor of Maryland of "collusion in regards to insurance fraud within the national system"); *id.* ¶ 40 (pleading that unnamed party shredded plaintiff's initial State court complaint); *id.* ¶ 44 ("The Plaintiff asserts that both the [State court] Judge and opposing counsel colluded to deny the rights of the then pro-se Petitioner and now pro-se Plaintiff, by purpose and willful misinterpretation of fact and law."); *id.* ¶ 120 (alleging that "State level co-conspirators committed multiple abuses" during plaintiff's State court action); *id.* ¶ 253 ("Plaintiff desires to bring suit against the foreign nationals that have attacked him and members of his class with direct specificity towards **France, Germany, Canada, and the European Union**[.]") (emphasis in original); *id.* ¶ 262 (averring that "the University of Maryland Medical Center is a potential Defendant . . . along with Therapeutic Living for Families").

In contrast, plaintiff makes no effort to allege with any specificity how defendants are responsible for the alleged violations raised in the Amended Complaint. *See, e.g., id.* ¶ 9 (alleging that Basora "was responsible for implementing and possibly creating the directives that directly and proximately, knowingly, willingly, and with malicious forethought deny CONTINUED

employment") (emphasis in original); *id.* ¶¶ 15, 16 (alleging that Phillip Mike Hall and Jim Brault engaged in treason and "used [their] expertise to manage directly and physically create, distort, and misrepresent the information the **Plaintiff's Exhibits** show" (emphasis in original); *id.* ¶ 104 ("Plaintiff states that the actions of the 'employer' are also translated equally across ALL Defendants and that everyone involved with the Discrimination of the Plaintiff should be held accountable." (emphasis in original)). It is wholly unclear why plaintiff has chosen to sue Yoh, Bon Secours, and the individual defendants. These deficiencies strike at the core purpose of Rule 8, which is to give the parties fair notice of the claims lodged against them so as to enable them to answer and prepare for trial. *See North Carolina v. McGuirt*, 114 F. App'x 555, 559 (4th Cir. 2004) (finding complaint did not satisfy Rule 8 where it "d[id] not permit the defendants to figure out what legally sufficient claim the plaintiffs are making and against whom they are making it").

Notably, the Amended Complaint is largely devoid of any factual allegations. The section titled "Facts" contains just four paragraphs, all of which direct the Court to plaintiff's initial Complaint and exhibits. *Id.* ¶¶ 59-63. But, it is not the Court's job to dig through plaintiff's voluminous filings to unearth the material facts giving rise to plaintiff's lawsuit.

Further, the Amended Complaint is chock-full of impenetrable arguments that appear to have little bearing on whether plaintiff was unlawfully terminated or wrongfully denied long-term disability benefits. *See id.* ¶ 1 (describing Thomas Edison as "[a] man revered for electrocuting animals and stealing ideas and claiming them as his own from talented workers"); *id.* at 27-44; (allegations concerning plaintiff's State court action and appeals to the Maryland Insurance Administration); *id.* ¶¶ 253-254 (allegations lodged against France).

With respect to the Amended Complaint's length, it is neither "short and plain" nor "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2), (d)(1). It spans an interminable 121 pages

and contains over 300 paragraphs. Indeed, the Amended Complaint is "'way too long, detailed and verbose for either the Court or the defendants to sort out the nature of the claims or evaluate whether the claims are actually supported by any comprehensible factual basis.'" *Plumhoff*, 286 F. Supp. 3d at 704 (quoting *Belanger v. BNY Mellon Asset Mgmt., LLC*, 307 F.R.D. 55, 58 (D. Mass. 2015)). This counsels in favor of dismissal, given the other deficiencies in the Amended Complaint. *See e.g.*, *Garst*, 328 F.3d at 379 (155 pages, 400 paragraphs, 99 attachments); *Vicom, Inc. v. Harbridge Merch. Svc*s., 20 F.3d 771, 775-76 (7th Cir. 1994) (finding 385-paragraph, 119-page "less-than-coherent" complaint should have been dismissed); *Kuehl v. FDIC*, 8 F.3d 905, 906-09 (1st Cir.1993) (358 paragraphs, 43 pages); *Jiggetts v. District of Columbia*, 319 F.R.D. 408, 415-16 (D.D.C. 2017) (dismissing 78-page complaint that "unquestionably f[ell] into the unintelligible category").

Ordinarily, a plaintiff should be provided leave to amend a complaint that fails to comply with Rule 8. *McGuirt*, 114 F. App'x at 559; *see* WRIGHT & MILLER, § 1281. Indeed, the Fourth Circuit has instructed that dismissing a claim with prejudice under Rule 8 "is an extreme sanction that must be examined carefully." *McGuirt*, 114 F. App'x at 559 (citing *Davis v. Williams*, 588 F.2d 69, 70 (4th Cir. 1978)). However, "[a]ggravating factors may . . . present sufficient weight in favor of that sanction and bring it within the appropriate discretion of the district court," especially where "the plaintiff has *persisted* in failing to comply with Rule 8(a)." *McGuirt*, 114 F. App'x at 559 (emphasis in original) (citing *Garst*, 328 F.3d at 379).

Nonetheless, I have not expressly instructed plaintiff to amend his pleading to cure its Rule 8 infirmities. Therefore, the Court shall dismiss the instant action *without* prejudice. *See McGuirt*, 114 F. App'x at 559 (observing that dismissal under Rule 8 is an "extreme sanction"); *see also Sharif v. Wellness Int'l Network, Ltd*., 376 F.3d 720, 725 (7th Cir. 2004) (holding that a court may

dismiss a complaint without prejudice for noncompliance with Rule 8 absent an explicit warning because "dismissal without prejudice does not constitute such a harsh sanction and does not foreclose a determination on the merits"); *Cook v. Unisys Fed. Gov't Grp.*, 7:14cv00579, 2015 WL 5690976, at *7 (W.D. Va. Sept. 28, 2015) (dismissing, without prejudice, defective 65-page complaint so that plaintiff may choose to re-file suit).

Dismissal of this case without prejudice will provide plaintiff with the opportunity to refile streamlined and simplified pleadings that will allow the presiding court to assess the sufficiency of plaintiff's allegations. Accordingly, I shall dismiss the Amended Complaint, without prejudice to the right of plaintiff to file a second amended complaint, due by January 9, 2020. However, plaintiff's leave to amend is subject to the Court's rulings that plaintiff lacks standing to assert claims under criminal statutes and that this Court lacks personal jurisdiction over Arcuri, Basora, De-La-Borderie, and Feraud.

## IV. Conclusion

For the foregoing reasons, I shall grant defendants' motions. ECF 46; ECF 47; ECF 48; ECF 52; ECF 53; ECF 54.

An Order follows, consistent with this Memorandum Opinion.

Date: December 18, 2019 _____/s/_____
Ellen L. Hollander
United States District Judge